AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    **1 : 18 M J 390** |
| 889 Glenwwod Ave., Floor 1, Cincinnati, OH 45229 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841a1 and 846 | Conspiracy to Possess and Possess with Intent to Distribute Controlled Substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler D. Field, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/26/18

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## 889 Glenwood Avenue, Floor 1, Cincinnati, Ohio

889 Glenwood Avenue, Floor 1, Cincinnati, Ohio is described as a three story, multi-family dwelling consisting of a brick outer shell with two entrances and a balcony facing north. According to the Hamilton County Assessor's database, 889 Glenwood Avenue is actually 887 Glenwood Avenue, however the numbers 889 are affixed to the brick pillar to the right of the front door of 889 Glenwood Avenue, Floor 1 and mail outside of the front door of the **SUBJECT LOCATION** was addressed to "889 Glenwood Avenue, Floor 1"

Any and all vehicles located within outbuildings, garages and/or the curtilage.



# ATTACHMENT B

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances. Any such telephones or other devices seized may be searched **only** for the following items:
    i.   Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
    ii.  Stored list of recent received calls;
    iii. Stored list of recent sent calls;
    iv.  Stored contact information;
    v.   Stored Photographs of Narcotics, Suspected Criminal Activity, and/or co-conspirators; and
    vi.  Stored text messages

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

**Affidavit of Special Agent Tyler Field**                                    **Page 10**

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, fentanyl, heroin, acetyl fentanyl, cocaine, or marijuana.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to fentanyl, heroin, acetyl fentanyl, cocaine, or marijuana, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

**Affidavit of Special Agent Tyler Field**                                           **Page 11**

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1.      I, Tyler D. Field, a Special Agent with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

2.      This affidavit is submitted in support of an application for search warrants for evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute, and distribute cocaine and marijauna.

3.   For all the reasons outlined in this affidavit, I have probable cause to believe that evidence related to these crimes will be located within the following **SUBJECT LOCATION**, which is more fully described in **Attachment A** (attached hereto and incorporated herein by reference):

   a.  **889 Glenwood Avenue, first floor, Cincinnati, Ohio:** This is the residence directly below Devin WRIGHT's apartment. According to the Hamilton County Assessor's database, 889 Glenwood Avenue is actually 887 Glenwood Avenue. However, a brick pillar to the right of the front door for the **SUBJECT LOCATION** is marked with "889" and mail outside of the front door of the **SUBJECT LOCATION** was addressed to "889 Glenwood Avenue, Floor 1"

## TRAINING AND EXPERIENCE

4.   I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since March 2016.  I also serve as a U.S. Army Military Police Captain in the Indiana Army National Guard and have done so for over sixteen years.  Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police

Affidavit of Special Agent Tyler Field                                                                                        **Page 1**

School, Plymouth Police Academy, and DEA Basic Agent Academy. During these courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

5. I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF INVESTIGATION

7. On June 13, 2018 at approximately 3:00 p.m., the Honorable Karen L. Litkovitz, United States Magistrate Judge in the Southern District of Ohio, signed a search warrant authorizing the search of 887 Glenwood Ave, #2, Cincinnati, Ohio.

**Affidavit of Special Agent Tyler Field**                                    **Page 2**

8.      On June 26, 2018 at approximately 10:34 a.m., agents observed WRIGHT drive his vehicle into the driveway of 887 Glenwood Avenue. The DEA Cincinnati Resident Office then detained WRIGHT and executed the search warrant. TFO Baker read WRIGHT his Miranda rights and asked WRIGHT if there were any guns or controlled substances in the residence. WRIGHT admitted that he possessed cocaine and a firearm in his bedroom. Agents escorted WRIGHT into the residence and WRIGHT indicated that the cocaine and firearm was under his bed. Agents subsequently located a loaded revolver and a bag containing approximately 86 grams of a white powder believed to be cocaine in the area that WRIGHT directed agents to. Agents also located approximately 1,500 grams of suspected marijuana inside WRIGHT's bedroom.

9.      Agents located WRIGHT's keys and checked the doors to the other apartments of the building. A key on WRIGHT's key chain opened the security door of the **SUBJECT LOCATION** but agents couldn't find a key that opened the front door of the apartment. A piece of mail in the mailbox outside of the **SUBJECT LOCATION** from Duke Energy was addressed to Knydra Hughes at the **SUBJECT LOCATION**, however a check on the CLEAR database revealed that Ms. Hughes has since activated utilities at other addresses. Consequently, I believe that she no longer lives at that address.

10.     I spoke with WRIGHT and asked if anyone else lives in the building and he said he was the only one that lived in the building. WRIGHT said that he did not have access to the **SUBJECT LOCATION**, however when asked why he possessed a key to the security door he said that he was the care taker of the building.

11.     Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that WRIGHT possessed a key to the security door of the

**Affidavit of Special Agent Tyler Field**                                    **Page 3**

**SUBJECT LOCATION,** WRIGHT's statement that he was the caretaker of the building, WRIGHT's statement that he is the only resident of the building, and my belief that Ms. Hughes no longer lives in the **SUBJECT LOCATION,** I believe that WRIGHT has access to the **SUBJECT LOCATION.** Based on my knowledge that WRIGHT possessed suspected cocaine, suspected marijuana, and a loaded firearm in his apartment, and my knowledge that drug traffickers often store controlled substances, weapons, money, and other items in various places to which they have access, I submit that it is reasonable to believe that evidence of WRIGHT's drug trafficking activities, contraband, tools of crime, and/or drug proceeds will be located inside of the **SUBJECT LOCATION.**

12.    Based on my training, experience, discussions with other law enforcement officers/agents, my Based upon my training and experience, my participation in this investigation, and other drug trafficking investigations, I have reason to believe that:

        a.    drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

        b.    drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

        c.    drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

        d.    drug traffickers often maintain money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry drug proceeds and/or controlled substances;

**Affidavit of Special Agent Tyler Field**                                                       **Page 4**

e.      drug traffickers often maintain in their residences and/or business establishments records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers (i.e. bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs);

f.      drug traffickers commonly use cellular phones to communicate with other members of the DTO, narcotics source of supply(s), and/or narcotics customers in furtherance of violations of the Uniform Controlled Substances Act;

g.      drug traffickers commonly provide illegal narcotics to their organization on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

h.      drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

i.      drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts), and evidence of this

**Affidavit of Special Agent Tyler Field**                                                  **Page 5**

includes documents like stock certificates, bonds, deposit certificates, and travelers checks;

j.        drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers possession, their residence and/or their place of business;

k.        drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations rental car receipts and luggage tags reflecting points of travel;

l.        drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns and automatic weapons. These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

m.        it is common for drug traffickers to secrete in their vehicles items identified in the above paragraphs;

n.        drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

o.        drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain elements of the traffickers drug crimes to include all items noted above;

**Affidavit of Special Agent Tyler Field**                                        **Page 6**

p.       drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles; and

q.       drug traffickers commonly secret in their residences and/or places of business, over a period of years, items such as those identified in the above paragraphs.

## CONCLUSION

13.     I believe the facts contained within this affidavit support probable cause to believe that WRIGHT is involved in distributing cocaine and other controlled substances. Based on my training, experience, discussions with other law enforcement officers/agents, and the information contained herein, I believe that probable cause exists that the items listed in Attachment B as evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute, and distribute heroin/fentanyl, cocaine and/or other controlled substances will be found at the location identified in **Attachment A**.

14.     Assistant United States Attorney Karl Kadon has reviewed this affidavit and the associated application and warrants and as in his opinion they are legally and factually sufficient, I respectfully ask the Court to authorize the requested search warrants.

_____

Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this          day of June 2018.

**Affidavit of Special Agent Tyler Field**                                              **Page 7**

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## 889 Glenwood Avenue, Floor 1, Cincinnati, Ohio

889 Glenwood Avenue, Floor 1, Cincinnati, Ohio is described as a three story, multi-family dwelling consisting of a brick outer shell with two entrances and a balcony facing north. According to the Hamilton County Assessor's database, 889 Glenwood Avenue is actually 887 Glenwood Avenue, however the numbers 889 are affixed to the brick pillar to the right of the front door of 889 Glenwood Avenue, Floor 1 and mail outside of the front door of the **SUBJECT LOCATION** was addressed to "889 Glenwood Avenue, Floor 1"

Any and all vehicles located within outbuildings, garages and/or the curtilage.



# **ATTACHMENT B**

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances. Any such telephones or other devices seized may be searched **only** for the following items:
   i. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
   ii. Stored list of recent received calls;
   iii. Stored list of recent sent calls;
   iv. Stored contact information;
   v. Stored Photographs of Narcotics, Suspected Criminal Activity, and/or co-conspirators; and
   vi. Stored text messages

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to, fentanyl, heroin, acetyl fentanyl, cocaine, or marijuana.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to fentanyl, heroin, acetyl fentanyl, cocaine, or marijuana, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence